J-S06022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                     :           PENNSYLVANIA
                     :
           v.                :
                     :
                     :
WILBERTO MELENDEZ           :
                     :
           Appellant       :   No. 486 MDA 2022

Appeal from the Order Entered March 3, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0002279-2018

BEFORE:   STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:               **FILED JUNE 14, 2023**

Appellant Wilberto Melendez appeals from the order denying his motion

to dismiss and bar retrial on charges of criminal homicide and related offenses.

Appellant argues that the trial court erred when it denied his motion to dismiss

the charges on double jeopardy grounds.  We affirm.

The trial court summarized the facts and procedural history as follows:

> By criminal information . . . [Appellant has been] charged with
> allegedly having committed the offenses of criminal homicide;
> firearms not to be carried without a license; persons not to
> possess, use, manufacture, control, sell or transfer firearms; and
> intimidation of witnesses or victims.  Said charges stem from a
> shooting alleged to have occurred on October 27, 2017, in the 300
> block of Marshall Street in the City and County of Lancaster.
>
> Following selection of a jury, trial initially commenced in the
> instant matter on May 14, 2019.  On May 21, 2019, during the
> sixth day of testimony, a Commonwealth witness testified to
> statements purportedly made by [Appellant] boasting that he had

---

[*] Former Justice specially assigned to the Superior Court.

committed a prior killing, had beaten that charge, and was going to beat the current charges as well. Prior to the commencement of trial, the attorney for the Commonwealth [indicated] that he had affirmatively instructed all Commonwealth witnesses not to discuss such matter[s]. Additionally, at this time, the attorney for the Commonwealth indicated that he had not elicited, and was surprised by, . . . such testimony. Due to the prejudicial nature of such testimony, the court granted [Appellant's] motion and granted a mistrial.

The second trial in the instant matter commenced with jury selection on May 10, 2021. On this date, a meeting occurred at the Lancaster City Bureau of [Police] Headquarters between Assistant District Attorney Cody Wade [(ADA Wade)], Detective Sergeant Robert Whiteford, and Antasia Bair to prepare Ms. Bair for her trial testimony. At the evidentiary hearing relative to [Appellant's] instant motion, [ADA] Wade credibly testified that this meeting had not previously occurred due to scheduling concerns. During this meeting, Ms. Bair reviewed her prior statements and testimony, received a preview of what to expect at trial, and was admonished by [ADA] Wade to tell the truth and avoid reference to any improper subjects during her trial testimony. This meeting was not recorded, nor were any verbatim or substantially verbatim recordings generated from this meeting. During this meeting, Ms. Bair mentioned certain things which were relevant to the matter which were not previously disclosed or varied from the information that she had previously provided to the investigators. This information included claims that she had seen Ernest Talton possess a firearm during the evening in question and that she heard Ernest Talton admonish someone, whom she believed to be [Appellant], that he should not harm the victim. In addition, at this time, Ms. Bair indicated that she observed [Appellant] "choke up" Quetesha Payne [in the parking lot of] a Turkey Hill convenience store in the early morning hours [during a confrontation involving Appellant, Talton, and the victim] preceding the homicide. [ADA] Wade credibly testified that he had no reason to believe the veracity of this representation as it was not supported by any other evidence in this matter. [ADA] Wade further credibly testified that he instructed Ms. Bair during this meeting that they were not going to discuss this topic during her trial testimony. Specifically, [ADA] Wade instructed Ms. Bair that her trial testimony would be limited in scope to what was developed during her testimony at the prior trial and in her prior statements to the investigators. [ADA] Wade credibly

testified that he believed that Ms. Bair was sufficiently cautioned and that she understood that this allegation would not be introduced during her testimony at the upcoming trial. Following this meeting, [ADA] Wade instructed Detective Sergeant Whiteford to prepare a supplemental report regarding this meeting. Detective Sergeant Whiteford prepared such a report, although this report did not include any reference to Ms. Bair's claims regarding [Appellant] purportedly placing his hands upon Ms. Payne. At the evidentiary hearing held in this matter, Detective Sergeant Whiteford testified that he did not hear Ms. Bair make such comments. This supplemental report was provided to counsel for [Appellant] on May 12, 2021.

On May 13, 2021, prior to the commencement of testimony for the day, the court met with counsel for the parties outside the presence of the jury. At this time, discussion was had regarding the meeting with Ms. Bair. Specifically, Ms. Bair's claims regarding certain statements allegedly made by Ernest Talton were addressed and the parties specifically agreed that this topic would not be introduced at trial. Contrary to the representations contained in [Appellant's] memorandum [of law in support of his motion to dismiss and bar retrial], the record does not demonstrate any reference to remedies or discharge of [Appellant] should this topic be introduced at trial. Additionally, at this time, there was no reference made by counsel regarding Ms. Bair's allegations that [Appellant] had "choked up" Ms. Payne.

On May 14, 2021, the Commonwealth presented the testimony of Antasia Bair at trial. It is noted that Ms. Bair was not an eyewitness to the homicide. Based upon the credible representations made by the attorneys for the Commonwealth, Ms. Bair was presented to provide testimony regarding her observations of the argument which occurred at the Turkey Hill convenience store [parking lot] prior to the homicide, as well as her knowledge of certain prior consistent statements made by an eyewitness to the homicide which identified [Appellant] as the shooter. During her testimony, Ms. Bair reiterated her claim that [Appellant] had "choked up" Ms. Payne at the Turkey Hill. Again, this allegation had not been referenced by Ms. Bair during her testimony at the first trial and was not contained in any of her prior statements. At this point, counsel for [Appellant] moved for a mistrial on the basis that such testimony was prejudicial to [Appellant] and was not provided to defense counsel through discovery.

Extensive argument was held on the record outside the presence of the jury. During this argument, [ADA] Wade indicated that he recalled Ms. Bair informing him at the recent meeting about [Appellant] and Ms. Payne "getting into it", but he couldn't recall what she had specifically told him. Additionally, at this time, [ADA] Wade informed that court that he had instructed Ms. Bair not to discuss this topic during her testimony. After consideration of providing the jury with a strong curative instruction, the court granted [Appellant's] motion for a mistrial in light of the serious nature of the instant matter.

On June 24, 2021, counsel for [Appellant] filed a motion to dismiss and bar retrial. After consultation with counsel regarding their availability, by order dated July 1, 2021, this court scheduled an evidentiary hearing relative to [Appellant's] motion for September 16, 2021.

In addition to the testimony noted above, at [the September 16, 2021] hearing, [ADA] Wade credibly testified that he did not seek to elicit any testimony from Ms. Bair regarding any physical contact between [Appellant] and Ms. Payne. [ADA] Wade further credibly testified that he was not seeking to cause a mistrial or prejudice [Appellant]. [ADA] Wade testified that the Commonwealth was pleased with the progression of the trial and that the award of a mistrial did not place the Commonwealth in a more advantageous position.[1]

Trial Ct. Op. & Order, 3/3/22, at 1-5 (citations and footnotes omitted; formatting altered).

On March 3, 2022,[2] the trial court filed an opinion and order denying

---

[1] Detective Sergeant Whiteford also testified at the September 16, 2021 hearing. *See* N.T. Hr'g, 9/16/21, at 59-75.

[2] We note that although the trial court's opinion and order denying Appellant's motion to dismiss was time-stamped and entered on the docket on March 2, 2022, the docket entries reflect that the trial court served the parties with a copy of the opinion and order on March 3, 2022. *See Commonwealth v. Jerman*, 762 A.2d 366, 368 (Pa. Super. 2000) (stating that "[i]n a criminal case, the date of entry of an order is the date the clerk of courts enters the
*(Footnote Continued Next Page)*

Appellant's motion to dismiss.[3]  *See id.* at 16-18.  Appellant filed a timely notice of appeal and a timely court-ordered Pa.R.A.P. 1925(b) statement.  In lieu of a Rule 1925(a) opinion, the trial court issued an order incorporating its March 3, 2022 opinion and order.  *See* Trial Ct. Order, 6/17/22.[4]

On appeal, Appellant raises the following issue for review:

> Whether [the] trial court erred in denying [Appellant's] motion for dismissal and barring retrial on double jeopardy grounds due to reckless prosecutorial conduct[?]

Appellant's Brief at 4 (formatting altered).

Appellant argues that double jeopardy bars retrial in this case because the trial court declared a mistrial due to the Commonwealth's misconduct.  *Id.* at 6-23.  In support, Appellant alleges two specific instances of prosecutorial misconduct: (1) a *Brady*[5] violation relating to the Commonwealth's failure to

---

order on the docket, furnishes a copy of the order to the parties, and records the time and manner of notice on the docket" (citations omitted)); *see also* Pa.R.Crim.P. 114(C)(2)(c); Pa.R.A.P. 108(a)(1), (d)(1).

[3] The trial court also found that Appellant's motion was not frivolous.  *See* Trial Ct. Op. & Order at 17.  "If the trial court enters an order denying the motion to dismiss on double jeopardy grounds and in doing so, makes no finding, in writing, that the motion is frivolous, then the order is a collateral order under [Pa.R.A.P.] 313 and is immediately appealable." *Commonwealth v. Kemick*, 240 A.3d 214, 217 (Pa. Super. 2020) (citations omitted); *see also* Pa.R.Crim.P. 587(B).

[4] The trial court's order adopting its prior opinion and order was time-stamped and entered on the docket on March 29, 2022, but the docket entries indicate that the trial court served the parties with a copy of this order on June 17, 2022.  *See Jerman*, 762 A.2d at 368; Pa.R.Crim.P. 114(C)(2)(c).

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

disclose Ms. Bair's statement that Appellant had choked Payne on the night of the murder; and (2) the Commonwealth improperly elicited testimony about the choking incident from Ms. Bair in violation of Pa.R.E. 404(b). *Id.* at 9-10.

First, regarding the alleged ***Brady*** violation, Appellant contends that the Commonwealth possessed Ms. Bair's statement "after trial began and intentionally withheld them from the defense until after a mistrial was declared." *Id.* at 14. Appellant claims that the Commonwealth's failure to disclose Ms. Bair's new statement satisfies all three prongs of the ***Brady*** standard because (1) the new statement was favorable impeachment material because it was inconsistent with Ms. Bair's prior testimony and statements and was inconsistent with the testimony of other witnesses; (2) the prosecution willfully suppressed the new statement because it was not included in Detective Sergeant Whiteford's report of Ms. Bair's interview; and (3) Appellant was prejudiced by the admission of evidence relating to his other bad acts. *Id.* at 19-21. Appellant concludes that the Commonwealth's ***Brady*** violation was intentional misconduct which bars retrial. *Id.* at 17-18, 21 (citing, *inter alia*, ***Commonwealth v. Smith***, 615 A.2d 321 (Pa. 1992)).

Appellant also argues that the Commonwealth engaged in prosecutorial misconduct by failing to adequately prepare Ms. Bair as a witness for trial. *Id.* at 21-23. Appellant contends that ADA Wade's testimony established that he did not adequately prepare Ms. Bair so she would not testify as to the choking incident, which is an inadmissible prior bad act. *Id.* at 22. Appellant concludes double jeopardy bars retrial because the Commonwealth's

misconduct here "is tantamount to the level of recklessness in

[***Commonwealth v. Johnson***, 231 A.3d 807 (Pa. 2020)]." ***Id.*** at 23.

Our standard and scope of review in this case are as follows:

An appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. King***, 271 A.3d 437, 443 (Pa. Super. 2021) (citation

omitted).

Our Supreme Court has explained that

the [double] jeopardy prohibition is not primarily intended to penalize prosecutorial error, but to protect citizens from the embarrassment, expense and ordeal of a second trial for the same offense and from compelling them to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent they may be found guilty.

***Johnson***, 231 A.3d at 826 (citations omitted and formatting altered).

We must also consider the following:

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, [Section] 10 of the

- 7 -

Pennsylvania Constitution[6] protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, [Section] 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

Dismissal is an appropriate remedy in such a case because a mistrial would be an inadequate remedy for systematic intentional prosecutorial misconduct.

By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. A fair trial is not simply a lofty goal, it is a constitutional mandate, and where that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.

In sum, conduct that constitutes mere prosecutorial error does not implicate double jeopardy; it is prosecutorial overreaching that cannot be condoned.

**Commonwealth v. Byrd**, 209 A.3d 351, 353-54 (Pa. Super. 2019) (citations

omitted and formatting altered).

---

[6] Article 1, Section 10 of the Pennsylvania Constitution provides in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb . . . ." Pa. Const. Art. 1, § 10.

Additionally, our Supreme Court has expanded the definition of "prosecutorial overreaching" to also include reckless conduct. *Johnson*, 231 A.3d at 826-27. Specifically, the Court held:

Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in *Smith*, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial. In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests . . . regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial **overreaching** – which, in turn, implies some sort of conscious act or omission.

*Johnson*, 231 A.3d at 826 (citations omitted and emphasis in original); *see also Commonwealth v. Krista*, 271 A.3d 465, 474 (Pa. Super. 2022) (explaining that following *Johnson*, "retrial should be barred when the prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident"), *appeal denied*, 285 A.3d 597 (Pa. 2022).

To establish a *Brady* violation, a defendant must prove three elements: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013) (citation omitted). This Court has stated that "if a *Brady* violation is committed by a prosecutor,

it can result in a dismissal on double jeopardy grounds if it is shown that the prosecutor intended to deprive the defendant of a fair trial." *Commonwealth v. Adams*, 177 A.3d 359, 372 (Pa. Super. 2017) (citation omitted).

In *Smith*, the Commonwealth violated *Brady* by failing to disclose that its chief witness received favorable treatment in unrelated criminal matters in exchange for his testimony and by failing to disclose autopsy records that contradicted the Commonwealth's theory of the case and supported the defendant's. *See Smith*, 615 A.2d at 322-23. Also, there was evidence that the Commonwealth knowingly concealed the *Brady* material during the trial and for more than two years after defendant's conviction. *See id.* at 323-24. Therefore, the *Smith* Court concluded that "[b]ecause the prosecutor's conduct in this case was intended to prejudice the defendant and thereby deny him a fair trial, [the defendant] must be discharged on the grounds that his double jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second trial." *Id.* at 325; *cf. Adams*, 177 A.3d at 373-74 (holding that although the prosecutor and police committed a *Brady* violation by failing to disclose video recordings of police interviews with the co-defendant, dismissal was not warranted where the record established the prosecutor did not act intentionally or in bad faith, but rather was "grossly negligent").

In *Johnson*, our Supreme Court granted the defendant's petition for allowance of appeal to determine whether "the Commonwealth's misrepresentation of physical evidence in [the defendant's] first trial bar[s]

retrial on double jeopardy grounds, notwithstanding the trial court's finding that the Commonwealth's misconduct was unintentional?" ***Johnson***, 231 A.3d at 816. Ultimately, the ***Johnson*** Court concluded that the Commonwealth made "almost unimaginable mistakes," in conflating two different pieces of evidence and the results of DNA tests performed on that evidence prior to and during trial. ***Id.*** at 826. The Court also found that although the mistakes were unintentional, they were "strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." ***Id.*** at 827 (citation omitted). Therefore, the Court held that double jeopardy barred the defendant from being retried. ***Id.*** at 827-28. Following ***Johnson***, this Court held that a ***Brady*** violation will not bar retrial on double jeopardy grounds where "[t]he prosecutor's error . . . does not rise to the level of the 'almost unimaginable' error in ***Johnson***[,]" and the record did not establish that "the prosecution engaged in overreaching or attempted to subvert justice." ***King***, 271 A.3d at 450 (citation omitted).

Subject to certain exceptions, evidence of other crimes committed by a defendant is generally inadmissible at trial. ***See*** Pa.R.Crim.P. 404(b)(1); ***Commonwealth v. Strong***, 825 A.2d 658, 665 (Pa. Super. 2003). However, "[f]or double jeopardy purposes, unfairly prejudicial statements by witnesses generally are not chargeable to the prosecuting attorney, especially when they are unexpected and made on cross-examination." ***Johnson***, 231 A.3d at 827 n.14; ***see also Commonwealth v. Graham***, 109 A.3d 733, 736-38 (Pa.

Super. 2015) (concluding that the prosecutor did not engage in misconduct where the defendant's wife mentioned the defendant engaged in sexual misconduct unrelated to the charged offenses because "[t]he prosecutor did not ask, directly or indirectly, about any unrelated criminal conduct"). Following **Johnson**, this Court also concluded that the Commonwealth's introduction of previously excluded evidence will not bar retrial, where the Commonwealth did not engage in reckless overreaching. **See Commonwealth v. Hill**, 1267 EDA 2022, 2023 WL 140340, at *4-5 (Pa. Super. filed Jan. 10, 2023) (unpublished mem.) (prosecutor asked the detective why the police began investigating the defendant, and the detective testified that he identified the defendant from surveillance footage, in violation of the trial court's order granting the defendant's motion *in limine* which precluded that detective from offering identification evidence based on the surveillance footage).[7]

Here, at trial, Ms. Bair testified that on the night of October 27, 2017, there was a confrontation between two groups of people in the parking lot of a Turkey Hill convenience store. **See** N.T. Trial, 5/14/21, at 453, 460-61. Ms. Bair stated that Appellant arrived a few minutes later and that he was angry and red faced. **See id.** at 462. ADA Wade asked Ms. Bair if Appellant said anything, and she responded that Appellant threatened to choke the women with Ms. Bair and was yelling "a lot of, . . . angry stuff." **See id.** at 462-63.

---

[7] We may cite to non-precedential decisions of this Court filed after May 1, 2019, for their persuasive value. **See** Pa.R.A.P. 126(b).

She continued, "[a]nd in that time that's when he choked up [Quetesha Payne] because she was having words back with them. It was really about them at the moment. And he choked her up." *See id.* at 463. ADA Wade then asked Ms. Bair about whether she heard if Appellant and Ernest Talton said anything to each other during this confrontation. *See id.* Appellant did not immediately object to the statement about the choking incident, but the trial court called a sidebar. *See id.* The trial court asked if a cautionary instruction about prior bad acts was necessary. *See id.* at 463-64. Appellant requested a mistrial on two grounds: (1) Ms. Bair's statement that he had choked a woman was a prejudicial and inadmissible prior bad act, and (2) the Commonwealth violated its continuing duty of discovery because it failed to disclose that Ms. Bair's new statement about Appellant choking or grabbing Ms. Payne. *See id.* at 464-501. The trial court granted the motion for mistrial. *See id.* at 501-02.

At the evidentiary hearing on Appellant's motion to bar retrial, ADA Wade testified that he and Detective Sergeant Whiteford met with Ms. Bair on May 10, 2021, to prepare her to testify at trial. *See* N.T. Hr'g, 9/16/21, at 10-12. ADA Wade explained that Ms. Bair mentioned several facts for the first time, including that Appellant had choked Ms. Payne during the confrontation in the parking lot. *See id.* at 23-24, 46-47. ADA Wade instructed Ms. Bair that during her testimony she had to tell the truth and not mention the first trial or any other bad acts by Appellant. *See id.* at 24-26. On May 14, 2021, the day Ms. Bair was scheduled to testify, ADA Wade briefly met with Ms. Bair

and reminded her not to mention the prior trial, not to mention Appellant's other bad acts, and to tell the truth. *See id.* at 36-38.

After the Commonwealth informed Appellant that Ms. Bair had brought up new information in her interview, Detective Sergeant Whiteford prepared a supplemental report of the interview.[8] *See id.* at 28-31. Ms. Bair's statement that Appellant choked Ms. Payne is not in that supplemental report. *See id.* at 32-35. ADA Wade explained that he did not ask Detective Sergeant Whiteford to revise the report to add the choking incident or Ms. Bair's other statements that were not included because he believed they were not relevant and did not plan to introduce them at trial. *See id.* at 34-35, 49-50, 53-55.

In its opinion and order, the trial court addressed whether the Commonwealth acted intentionally or reckless as follows:

> [T]here is no evidence of record to suggest that any lack of disclosure; by the attorneys for the Commonwealth resulted from any intentional, willful, or reckless conduct, as opposed to mere inadvertence.

---

[8] Appellant marked the supplemental report as Exhibit D-1. *See* N.T. Hr'g, 9/16/21, at 30-31. This exhibit is not included in the certified record. Additionally, we note that numerous documents in the electronic certified record are distorted or are illegible. *See, e.g.*, Criminal Compl., 2/16/18; Waiver of Arraignment, 5/8/18; *Pro Se* Mot. for Discovery/Transcripts, 8/16/19. Although the omission of Exhibit D-1 and the distorted documents in the certified record does not impede our review, we remind counsel that, the "[a]ppellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and quotation marks omitted); *see also* Pa.R.A.P. 1921, Note (stating that "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" (citation omitted)).

Most importantly, it must be recognized that the mistrial granted in this matter, upon [Appellant's] motion, did not pertain to any purported discovery violations. More specifically, the court granted a mistrial in this matter because the jury was presented with testimony regarding a purported prior bad act allegedly committed by [Appellant] some time before, and at a different location, from the homicide.

In assessing this claim, as noted above, the court finds that [ADA] Wade credibly testified that: he did not intend to introduce this evidence at trial; he admonished Ms. Bair not to present this testimony at trial; he did not elicit such testimony; he was surprised by such testimony; and, he did not seek to prejudice [Appellant's] right to a fair trial. [ADA] Wade further credibly testified that the Commonwealth has received no benefit from the award of [Appellant's] motion for a mistrial in this matter.

Accordingly, based upon the totality of the evidence presented, it is clear to this court that the introduction of the challenged testimony was solely the result of an unexpected "blurt out" on the part of a lay witness, despite the reasonable attempts of the attorneys for the Commonwealth to prevent such. The court finds that the record in this matter is devoid of any evidence that the Commonwealth acted in an intentional or reckless manner. The court further finds that the record in this matter is devoid of any evidence of prosecutorial overreaching which, in turn, implicates some sort of conscious act or omission. Accordingly, the double jeopardy bar of retrial is not warranted in this matter. Rather, this court correctly granted [Appellant's] motion for a mistrial upon the inadvertent admission of the prejudicial prior bad acts evidence. As the result thereof, [Appellant] will receive the benefit of a new trial untainted by such evidence.

Trial Ct. Op. & Order at 15-16 (footnotes omitted and some formatting altered); *see also id.* at 5 (concluding that ADA Wade's testimony at the September 16, 2021 evidentiary hearing was credible).

Based on our review, we conclude the record supports the trial court's credibility determinations and legal conclusions that the Commonwealth's actions were not intentionally or recklessly undertaken to deprive Appellant of

a fair trial. *See King*, 271 A.3d at 443. Further, we agree with the trial court and adopt its reasoning in concluding that Ms. Bair's statement about the choking incident was not *Brady* material nor did the Commonwealth violate *Brady*, or Pa.R.Crim.P. 573. *See* Trial Ct. Op. & Order at 8-15. Additionally, the trial court credited ADA Wade's testimony that he did not intentionally conceal evidence which he knew to be material with the intent to deprive Appellant of a fair trial. *Compare Smith*, 615 A.2d at 322 *with Adams*, 177 A.3d at 373-74. Accordingly, on this record, we conclude that double jeopardy does not bar retrial with respect to Ms. Bair's statement about the choking incident made during her witness preparation. With respect to the questioning of Ms. Bair, the record reflects that ADA Wade did not ask Ms. Bair any questions that directly or indirectly related to Appellant's other criminal conduct. *See Graham*, 109 A.3d at 736-38. Therefore, we agree with the trial court that there was no intentional prosecutorial misconduct for double jeopardy purposes. *See Byrd*, 209 A.3d at 353-54; *Adams*, 177 A.3d at 371-72.

Further, applying the *Johnson* standard, we find that the Commonwealth's actions do not reflect a conscious disregard for the substantial risk that Appellant would be deprived of a fair trial. *See Johnson*, 231 A.3d at 826. Accordingly, the trial court's finding that the Commonwealth did not act recklessly when it failed to disclose Ms. Bair's statement about the choking incident is supported by the record and pertinent legal authority. *See* Trial Ct. Op. & Order at 15-16. As for the Commonwealth's witness

preparation and trial examination of Ms. Bair, the trial court found that the Commonwealth made reasonable attempts to prevent the witness from testifying about Appellant's prior bad acts, but the witness's statements were unexpectedly "blurt[ed] out." **See** Trial Ct. Op. & Order at 16. Our review concludes that the record supports the trial court's determination that the Commonwealth did not engage in any reckless overreaching. **See Krista**, 271 A.3d at 474; **King**, 271 A.3d at 450; **Hill**, 2023 WL 140340 at *5. For these reasons, we affirm the trial court's order denying Appellant's motion to bar retrial.

Order affirmed. Case remanded for retrial. Jurisdiction relinquished.

P.J.E. Stevens joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/14/2023

- 17 -

Circulated 05/30/2023 11:32 AM

June 27, 2022

Re: Wilberto Melendez
Cp Cr No: 2279-2018
Superior Cr No: 486 MDA 2022

Index of Opinion

1. Index of Opinion
2. Order of the Court
3. Opinion and Order

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 

:

vs. : No. CP-36-CR-0002279-2018

:

WILBERTO MELENDEZ :

## **ORDER**

Appellant/Defendant, by Notice of Appeal filed on March 21, 2022, has appealed from

the order entered on March 2, 2022, denying Appellant's Motion to Dismiss and Bar Retrial.

The reasons for this court's rulings are contained in the Opinion and Order entered on March 2,

2022. This court relies on said documents for compliance with Rule 1925(a) of the Pennsylvania

Rules of Appellate Procedure. As such, said documents are attached hereto.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE
March 29, 2022

ATTEST:

Copies to: Travis Anderson, Esquire, Assistant District Attorney
Jack McMahon, Esquire, counsel for Appellant

CLERK OF COURTS
2022 MAR 29 PM 2: 27
LANCASTER COUNTY, PA

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
:
:
vs. : No. CP-36-CR-0002279-2018
:
WILBERTO MELENDEZ :

### **OPINION and ORDER**

BY: SPAHN, JR., J.
March 2, 2022

By Criminal Information docketed to Number CP-36-CR-0002279-2018, Defendant is

charged with allegedly having committed the offenses of Criminal Homicide[1]; Firearms Not to

be Carried Without a License[2]; Persons Not to Possess, Use, Manufacture, Control, Sell or

Transfer Firearms[3]; and, Intimidation of Witnesses or Victims[4]. Said charges stem from a

shooting alleged to have occurred on October 27, 2017, in the 300 block of Marshall Street in the

City and County of Lancaster.

Following selection of a jury, trial initially commenced in the instant matter on May 14,

2019. On May 21, 2019, during the sixth day of testimony, a Commonwealth witness testified to

statements purportedly made by Defendant boasting that he had committed a prior killing, had

beaten that charge, and was going to beat the current charges as well. (N.T. 5/21/19, p. 886-

888). Prior to the commencement of trial, the attorney for the Commonwealth indicted that he

had affirmatively instructed all Commonwealth witnesses not to discuss such matter.

---

[1] 18 Pa.C.S.A. § 2501(a).
[2] 18 Pa.C.S.A. § 6106(a)(1).
[3] 18 Pa.C.S.A. § 6105(a)(1). It is noted that this charge was severed from trial in compliance with controlling authority.
[4] 18 Pa.C.S.A. § 4952(a)(1).

Additionally, at this time, the attorney for the Commonwealth indicated that he had not elicited, and was surprised by, by such testimony. (N.T. 5/21/19, p. 886-887). Due to the prejudicial nature of such testimony, the court granted Defendant's motion and granted a mistrial. (N.T. 5/21/19, p. 891).

The second trial in the instant matter commenced with jury selection on May 10, 2021. On this date, a meeting occurred at the Lancaster City Bureau of Headquarters between Assistant District Attorney Cody Wade, Detective Sergeant Robert Whiteford, and Antasia Bair to prepare Ms. Bair for her trial testimony. (N.T. 9/16/21, p. 10-12). At the evidentiary hearing relative to Defendant's instant motion, Attorney Wade credibly testified that this meeting had not previously occurred due to scheduling concerns. (N.T. 9/16/21, p. 11). During this meeting, Ms. Bair reviewed her prior statements and testimony, received a preview of what to expect at trial, and was admonished by Attorney Wade to tell the truth and avoid reference to any improper subjects during her trial testimony. (N.T. 9/16/21, p. 14, 24-26). This meeting was not recorded, nor were any verbatim or substantially verbatim recordings generated from this meeting. (N.T. 9/16/21, p. 46, 74-75). During this meeting, Ms. Bair mentioned certain things which were relevant to the matter which were not previously disclosed or varied from the information that she had previously provided to the investigators. (N.T. 9/16/21, p. 27). This information included claims that she had seen Ernest Talton possess a firearm during the evening in question and that she heard Ernest Talton admonish someone, whom she believed to be the defendant, that he should not harm the victim. (Defense Exhibit No. 1). In addition, at this time, Ms. Bair indicated that she observed the defendant "choke up" Quetesha Payne at a Turkey Hill convenience store in the early morning hours preceding the homicide. (N.T. 9/16/21, p. 40). Attorney Wade credibly testified that he had no reason to believe the veracity of this

2

representation as it was not supported by any other evidence in this matter. (N.T. 9/16/21, p. 47, 54). Attorney Wade further credibly testified that he instructed Ms. Bair during this meeting that they were not going to discuss this topic during her trial testimony. (N.T. 9/16/21, p. 40, 47-48). Specifically, Attorney Wade instructed Ms. Bair that her trial testimony would be limited in scope to what was developed during her testimony at the prior trial and in her prior statements to the investigators. (N.T. 9/16/21, p. 40, 47-48). Attorney Wade credibly testified that he believed that Ms. Bair was sufficiently cautioned and that she understood that this allegation would not be introduced during her testimony at the upcoming trial. (N.T. 9/16/21, p. 48). Following this meeting, Attorney Wade instructed Detective Sergeant Whiteford to prepare a supplemental report regarding this meeting. (N.T. 9/16/21, p. 26-29, 69-70). Detective Sergeant Whiteford prepared such a report, although this report did not include any reference to Ms. Bair's claims regarding the defendant purportedly placing his hands upon Ms. Payne. (N.T. 9/16/21, p. 30-35). At the evidentiary hearing held in this matter, Detective Sergeant Whiteford testified that he did not hear Ms. Bair make such comments.[5] (N.T. 9/16/21, p. 65-68). This supplemental report was provided to counsel for the defendant on May 12, 2021.[6] (N.T. 9/16/21, p. 26-29, 69-70).

On May 13, 2021, prior to the commencement of testimony for the day, the court met with counsel for the parties outside the presence of the jury. At this time, discussion was had regarding the meeting with Ms. Bair. Specifically, Ms. Bair's claims regarding certain statements allegedly made by Ernest Talton were addressed and the parties specifically agreed that this topic would not be introduced at trial. Contrary to the representations contained in

---

[5] It is noted that Detective Sergeant Whiteford testified that he had briefly stepped out of the meeting with Ms. Bair that occurred on May 10, 2021. (N.T. 9/16/21, p. 65).

[6] It is noted that Defendant's memorandum suggests that counsel for Defendant received this report at the end of the day on May 13, 2021. Such representation is clearly inaccurate as the official transcript demonstrates that this matter was addressed by counsel for the parties with the court prior to the commencement of testimony on May 13, 2021.

3

Defendant's memorandum, the record does not demonstrate any reference to remedies or discharge of Defendant should this topic be introduced at trial. Additionally, at this time, there was no reference made by counsel regarding Ms. Bair's allegations that Defendant had "choked up" Ms. Payne. (N.T. 5/13/21, p. 230-232).

On May 14, 2021, the Commonwealth presented the testimony of Antasia Bair at trial. It is noted that Ms. Bair was not an eyewitness to the homicide. (N.T. 9/16/21, p. 44). Based upon the credible representations made by the attorneys for the Commonwealth, Ms. Bair was presented to provide testimony regarding her observations of the argument which occurred at the Turkey Hill convenience store prior to the homicide, as well as her knowledge of certain prior consistent statements made by an eyewitness to the homicide which identified Defendant as the shooter. (N.T. 9/16/21, p. 44, 74). During her testimony, Ms. Bair reiterated her claim that Defendant had "choked up" Ms. Payne at the Turkey Hill. (N.T. 5/14/21, p. 462-462). Again, this allegation had not been referenced by Ms. Bair during her testimony at the first trial and was not contained in any of her prior statements. At this point, counsel for the defendant moved for a mistrial on the basis that such testimony was prejudicial to Defendant and was not provided to defense counsel through discovery.

Extensive argument was held on the record outside the presence of the jury. During this argument, Attorney Wade indicated that he recalled Ms. Bair informing him at the recent meeting about the defendant and Ms. Payne "getting into it", but he couldn't recall what she had specifically told him. (N.T. 5/14/21, p. 473). Additionally, at this time, Attorney Wade informed that court that he had instructed Ms. Bair not to discuss this topic during her testimony. N.T. 5/14/21, p. 473, 500). After consideration of providing the jury with a strong curative instruction, the court granted Defendant's motion for a mistrial in light of the serious nature of

4

the instant matter.

On June 24, 2021, counsel for Defendant filed a Motion to Dismiss and Bar Retrial. After consultation with counsel regarding their availability, by order dated July 1, 2021, this court scheduled an evidentiary hearing relative to Defendant's Motion for September 16, 2021.

In addition to the testimony noted above, at such hearing, Attorney Wade credibly testified that he did not seek to elicit any testimony from Ms. Bair regarding any physical contact between Defendant and Ms. Payne. (N.T. 9/16/21, p. 49-50, 53). Attorney Wade further credibly testified that he was not seeking to cause a mistrial or prejudice the defendant. (N.T. 9/16/21, p. 49-50, 53). Attorney Wade testified that the Commonwealth was pleased with the progression of the trial and that the award of a mistrial did not place the Commonwealth in a more advantageous position. (N.T. 9/16/21, p. 43, 50-51). Following this hearing, the court ordered submission of written legal memorandum by counsel for the parties.

It is noted that counsel for the defendant filed a second Motion to Dismiss and Bar Retrial on November 8, 2021.[7] On November 19, 2021, counsel for Defendant filed their written memorandum of law. On December 17, 2021, the attorneys for the Commonwealth filed their memorandum of law[8]. As such, the matter is ripe for review.

The Double Jeopardy Clauses of both the United States Constitution and Constitution of the Commonwealth of Pennsylvania "protect a defendant from repeated criminal prosecutions for the same offense." *Commonwealth v. Byrd*, 209 A.3d 351, 353 (Pa. Super. 2019). As further noted by our Superior Court, the purpose behind this prohibition is to prevent the government

---

[7] The court is without knowledge as to why counsel for Defendant filed a second motion in this regard. It is noted that this motion is nearly identical to the motion filed previously on June 24, 2021, but for the omission of three paragraphs relative to actions of Attorney Wade. Defendant makes no reference to the second motion in his supporting memorandum.

[8] It is noted that the Commonwealth's memorandum references both this docket number as well as charges previously docketed at Number CP-36-CR-0005109-2018. On May 31, 2019, the court approved the motion of the Commonwealth to nolle prosse the charges docketed at Number CP-36-CR-0005109-2018.

from making "repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Commonwealth v. Wilson*, 227 A.3d 928, 936 (Pa. Super. 2020).

It has been long standing jurisprudence, under both state and federal law, that a subsequent trial is prohibited when a mistrial resulted from prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial. *Byrd*, 209 A.3d at 353. In *Commonwealth v. Smith*, the Pennsylvania Supreme Court ruled that the Constitution of this Commonwealth provides more extensive double jeopardy protections than its federal counterpart. Therein, the Supreme Court held that retrial is impermissible "not only when the prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1980). Our Superior Court has noted that "*Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the *Smith* court primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process." *Commonwealth v. Lambert*, 765 A.2d 306, 327 (Pa. Super. 2000).

As succinctly stated by our Superior Court,

> The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of denying him a fair trial. However, because of the compelling societal interest in prosecuting criminal defendants to conclusion, our Supreme Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and only in cases of blatant prosecutorial misconduct.

*Commonwealth v. Wilson*, 147 A.3d 7, 13 (Pa. Super. 2016).

6

In *Commonwealth v. Krista*, ___ A.3d ___ (Pa. Super. 2/4/22), the Superior Court noted that subjecting a defendant to a second trial following a mistrial or a successful appeal does not ordinarily offend double jeopardy protections.

In *Commonwealth v. Johnson*, 231 A.3d 807 (Pa. 2020), our Supreme Court considered whether the double jeopardy clause bars retrial "where the Commonwealth obtains a conviction based on false evidence and its misconduct, while not undertaken with the intent to deny the defendant a fair trial, nevertheless stems from prosecutorial errors that rise substantially above ordinary negligence." *Johnson*, 231 A.3d at 810. Therein, the High Court held that "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." *Johnson*, 231 A.3d at 826. In so holding, the Court clarified that it did not "suggest that all situations involving, serious prosecutorial error implicate double jeopardy." *Id.* Rather, "retrial is only precluded where there is a prosecutorial overreaching which, in turn, implicates some sort of conscious act or omission." *Id.*

In *Commonwealth v. Kearns*, 70 A.3d 881 (Pa. Super. 2013), our Superior Court held that a prosecutor's gross negligence in failing to obtain and produce the defendant's post-arrest written statement to police and statement of a principal eyewitness was an insufficient basis upon which to bar retrial on double jeopardy grounds. Rather, the court found the appropriate remedy in such circumstances was the grant of a new trial. This principle has been recently reaffirmed by the Superior Court. *See, Commonwealth v. Krista*, ___ A.3d ___ (Pa. Super. 2/4/22) (holding that improper commentary by a prosecutor impinging upon the defendant's right to remain silent did not warrant double jeopardy relief); *Commonwealth v. King and Haskins*, ___ A.3d ___ (Pa.

Super. 12/14/21) (holding that a *Brady* violation by the Commonwealth, in and of itself, merits relief in the form of a new trial but not the application of the double jeopardy bar precluding retrial); *Commonwealth v. Sanchez*, 262 A.2d 1283 (Pa. Super. 2021) (Commonwealth's negligent failure to disclose DNA evidence to the defendant before or during trial did not rise to the type of intent or recklessness requiring dismissal on double jeopardy grounds); *Commonwealth v. Rivera*, 241 A.3d 411 (Pa. Super. 2020) (unpublished memorandum)[9] (multiple systematic errors by the Commonwealth, including, but not limited to, introducing photographs at trial that it failed to disclose to appellants prior to trial, destroying relevant text messages, and failing to disclose prior to trial inculpatory statement made by one appellant to agent were the result of negligence and did not rise to the level of intent or recklessness required to warrant double jeopardy relief).

Rule 573 of the Pennsylvania Rules of Criminal Procedure, as well as *Brady v. Maryland*[10] and *Giglio v. United States*[11], and their progeny, govern discovery in criminal cases, and mandate that the Commonwealth produce to the defendant, *inter alia*, all potentially exculpatory evidence. Rule 573 of the Pennsylvania Rules of Criminal Procedure "imposes greater obligations upon prosecutors than the *Brady* requirements." *Commonwealth v. Maldonado*, 173 A.3d 769, 774 (Pa. Super. 2017). The Commonwealth violates *Brady* by failing to disclose exculpatory evidence as well as evidence that may be used to impeach a prosecution witness. *Commonwealth v. Johnson*, 174 A.3d 1050, 1056 (Pa. 2017). Stated another way, the duty to disclose may encompass impeachment evidence as well as directly exculpatory evidence.

---

[9] *See*, Pa.R.A.P. 126(b) (stating non-precedential decisions of Superior Court filed after May 1, 2019 may be cited for persuasive value).

[10] 373 U.S. 83 (1963) (holding that the government's withholding of evidence that is material to the determination of either guilt or punishment of a criminal defendant violates the defendant's constitutional right to due process).

[11] 405 U.S. 150 (1972) (holding that when the reliability of a government witness may well be determinative of guilt or innocence, that nondisclosure of evidence affecting credibility of the witness violates the defendant's constitutional right to due process).

8

*Commonwealth v. Lesko*, 15 A.3d 345 (Pa. 2011); *Commonwealth v. Lambert*, 884 A.2d 848 (Pa. 2005).

Rule 573 of the Pennsylvania Rules of Criminal Procedure mandates the disclosure of certain information by the Commonwealth upon request by the defendant. These items include, in pertinent part, "any evidence favorable to the accused that is material either to guilt or punishment and is within the possession or control of the attorney for the Commonwealth."[12] In addition, Rule 573 establishes that a trial court has the discretion to mandate the disclosure of certain other information upon pretrial motion of the defendant and upon a showing that such information is material to the preparation of the defense and that the request is reasonable. These items include, in pertinent part, "all written and recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial"[13] and "any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice."[14] Rule 573 also imposes a continuing duty of such disclosure, both prior to and during trial.[15]

Herein, Defendant alleges that his constitutional due process rights were violated in that the Commonwealth failed to disclose certain information regarding statements made to the Commonwealth by Antasia Bair. As detailed above, on May 10, 2021, Antasia Bair met with Assistant District Attorney Cody Wade and Detective Sergeant Robert Whiteford of the Lancaster City Bureau of Police to prepare for her upcoming testimony at trial. During the meeting, Ms. Bair provided information, which she had not previously disclosed, including an allegation that Defendant had physically choked Quetesha Payne at a Turkey Hill convenience

---

[12] Pa.R.Crim.P. 573(B)(1)(a).
[13] Pa.R.Crim.P. 573(B)(2)(a)(ii).
[14] Pa.R.Crim.P. 573(B)(2)(a)(iv).
[15] Pa.R.Crim.P. 573(D).

9

store shortly before the instant homicide would occur at a separate location in the City of Lancaster. This information was not included in the supplemental report prepared regarding the meeting of May 10, 2021, which was presented to counsel for Defendant on May 12, 2021. Additionally, Defendant asserts that the attorneys for the Commonwealth failed to mention this information during a discussion with the court, outside of the presence of the jury, on May 13, 2021. It is recognized that this discussion pertaining to other information provided by Ms. Bair during the meeting of May 10, 2021.

"A party seeking *Brady* based relief bears the burden of establishing entitlement to such relief by proving that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensured to the defendant." *Commonwealth v. Paddy*, 15 A.3d 431, 450 (2011).

In the instant matter, the parties have presented inconsistent positions relative to the nature of the information in question. The defense argues that the challenged comments of Ms. Bair are favorable to Defendant as impeachment evidence as "it was new information, inconsistent with Bair's previous statements to police and prior sworn testimony, as well as inconsistent with other eyewitnesses at Turkey Hill; all of which goes directly to Bair's credibility." (Defendant's Brief in Support of Granting Motion for Dismissal and Barring Retrial – p. 14). Conversely, the Commonwealth asserts that the disclosure in question by Ms. Bair is not inconsistent with her prior statements. Rather, the Commonwealth posits that Ms. Bair's current statements are simply more detailed than her prior statements and would not be the subject of proper impeachment. (Commonwealth's Brief in Opposition to the Defendant's Motion for Dismissal and Barring Retrial – pgs. 8, 10-12).

10

In assessing the parties' respective positions, this court is placed into the difficult situation of assessing the favorability of this information to the defendant. As recognized by our appellate courts,

> A determination of whether the statements of prosecution witnesses would have been helpful to the defense is not to be made by the prosecution or the trial court. . . . Matters contained in a witness' statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness.

*Commonwealth v. Alston*, 864 A.2d 539, 547 (Pa. Super. 2004) (citing *Commonwealth v. French*, 611 A.2d 175, 179-80 (Pa. 1992).

The allegations of Ms. Bair at issue herein are clearly not of an inherent exculpatory nature inasmuch as said statements allege that the defendant physically assaulted a female in the hours which preceded the homicide. As such, Ms. Bair's claims are in the nature of a prior bad act.

Defendant claims that the new information would be useful for impeachment purposes in that Ms. Bair had not previously raised such claims. As noted by the Commonwealth, Pennsylvania jurisprudence has long held that "it is well-established that for a statement to be used for impeachment, a statement must be inconsistent with, and not just different, from trial testimony. Mere omissions from prior statements do not render prior statements inconsistent for impeachment purposes." *Commonwealth v. Johnson*, 758 A.2d 166, 170 (Pa. Super. 2000); *see also*, *Commonwealth v. Washington*, 700 A.2d 400, 411 n.17 (Pa. 1997); *Commonwealth v. McEachin*, 537 A.2d 883, 891 (Pa. Super. 1988); *Commonwealth v. Rue*, 524 A.2d 973, 976 (Pa. Super. 1987); *Commonwealth v. Hammond*, 454 A.2d 60, 65 (Pa. Super. 1982). "Where a witness offers testimony that is more detailed than the witness' prior statement, that is not an inconsistent statement upon which one can impeach." *Commonwealth v. Rayner*, 153 A.3d

1049, 1062 (Pa. Super. 2016). Accordingly, the additional allegations at issue raised by Ms. Bair would not be traditionally appropriate impeachment material as a prior inconsistent statement.

Although the statement at issue would not serve as the basis of impeachment as a prior inconsistent statement, it must be recognized that the Commonwealth has conceded that the statement lacks any additional support from the other evidence in this matter. Stated another way, the Commonwealth went so far as to concede that they have no reason to believe that Ms. Bair's statement has any accuracy. Accordingly, Defendant could arguably seek introduction of the statement to cast doubt upon Ms. Bair's overall credibility, independent of any concerns regarding inconsistency.[16] As such, this court cannot find this statement as wholly lacking exculpatory value.

Turning to the next prong of the *Brady* analysis, the burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence. *Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999). As argued by the Commonwealth herein, it is recognized that Pennsylvania jurisprudence imposes "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Commonwealth v. Natividad*, 200 A.3d 11, 26 (Pa. 2019) (quoting *Moore v. Illinois*, 408 U.S. 786, 795 (1995)). Under *Brady*, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Commonwealth v. Haskins*, 60 A.3d 528, 546-47 (Pa. Super. 2012) (quoting *United States v. Bagley*, 473 U.S. 667, 677 (1985)). That noted, the

---

[16] While it is not within the purview of the court to speculate as to the strategic decisions of counsel for the defendant, it cannot be overlooked that introduction of Ms. Bair's statements in this regard would certainly expose the jury to the prejudicial nature of the prior bad acts alleged in the statement. As will be addressed further herein, it is the prejudicial impact of such statements which led the court to grant Defendant's request for a mistrial in this matter.

12

appellate courts of this Commonwealth have recognized the pretrial disclosure of prior statements of Commonwealth witnesses to the defense. *See, Commonwealth v. Contakos*, 424 A.2d 1284 (Pa. 1981) (majority of court agreeing that defense is entitled to notes of any interviews conducted by the prosecution where the notes are a substantially verbatim record of the interview); *Commonwealth v. Grayson*, 353 A.2d 1976) (a new trial was awarded where the defense was denied access to review pretrial statements made by Commonwealth witnesses); *Commonwealth v. Morris*, 281 A.2d 851 (Pa. 1971) (where law enforcement officer conducted an interview of the victim in a rape prosecution and took extensive notes, those notes were subject to disclosure to discovery by defense); *Commonwealth v. Parente*, 440 A.2d 549 (Pa. Super. 1982) (the recorded or substantially verbatim statements by eyewitnesses that the Commonwealth intends to call at trial must be available to defense counsel upon a motion for pretrial discovery); *see contra, Commonwealth v. Stetler*, 95 A.3d 864 (Pa. Super. 2014) (informal notes compiled by investigators during interviews are not subject to discovery requirements under Rule 573 of the Pennsylvania Rules of Criminal Procedure in that they are not substantially verbatim oral statements signed, adopted, or otherwise shown to be substantially verbatim statements of the witness). There can be no doubt that these holdings have been largely incorporated into Rule 573 of the Pennsylvania Rules of Criminal Procedure.

Applied to the instant matter, the statements at issue were first offered by Ms. Bair during a meeting which occurred on May 10, 2021 at the Lancaster City Bureau of Police Headquarters. Present at this meeting were Ms. Bair, Assistant District Attorney Cody Wade, and Detective Sergeant Robert Whiteford. The purpose of this meeting was to permit Ms. Bair to review her prior statements and testimony so as to prepare her for testimony at trial. This meeting was not recorded, nor were any verbatim or substantially verbatim accounts preserved of this meeting.

13

As previously addressed, Assistant District Attorney Wade credibly testified that he had no reason to believe the accuracy of Ms. Bair's representations as they were not supported by any other evidence in this matter. As such, it is clear that Attorney Wade discounted these allegations and instructed Ms. Bair that they would raised at trial. At the direction of Attorney Wade, Detective Sergeant Whiteford prepared a supplemental report regarding the interview which was promptly provided to counsel for the defendant. Detective Sergeant Whiteford credibly testified that he did not recall hearing Ms. Bair making any such statements during the meeting and that he had briefly stepped out of the meeting. Additionally, Detective Sergeant Whiteford credibly testified that any representations suggestive to the contrary made at the time of trial were the result of confusion between this case and other matters. It must also be noted that, at the time of trial, Attorney Wade indicated to the court that he had a vague recollection that Ms. Bair had told him during the meeting that Defendant and Ms. Payne had "gotten into it" at the Turkey Hill convenience store, but he was unable to describe her comments during the meeting with any additional specificity.

With regard to the issue of materiality, "evidence is material if there is a reasonable possibility that, had the evidence been disclosed to the defense, the result of the trial would have been different." *Commonwealth v. Lambert*, 884 A.2d at 854; *See also, Commonwealth v. Collins*, 888 A.2d 564, 577-78 (Pa. 2005). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002).

As the court granted Defendant's request for a mistrial, this court cannot weigh any determination of materiality against the outcome of trial as the matter never reached verdict.

14

That said, it must be considered that Ms. Bair was not an eyewitness to the homicide. Rather, based upon the credible representations made by the attorneys for the Commonwealth, Ms. Bair was presented for the limited purpose of testifying regarding her observations of the argument which occurred at the Turkey Hill convenience store prior to the homicide, as well to corroborate certain prior consistent statements made by an eyewitness to the homicide which identified Defendant as the shooter.

While evidence that Ms. Bair is currently raising claims that Defendant physically grabbed a female during the argument at the Turkey Hill convenience store, and that such evidence is not supported by any other evidence, may arguably be helpful in the impeachment of her credibility, it is not of such quality that there is a reasonable possibility that it would lead to a different verdict at trial. Additionally, this court cannot overlook the prejudicial impact of such testimony as reflective of prior violent acts on the part of the defendant shortly before the homicide. In suggesting the benefit of introduction of such evidence for impeachment purposes, Defendant, herein, minimizes the integrated inculpatory aspects, which, taken in their context, substantially undermine the allegedly exculpatory value of the statement.

Accordingly, for the foregoing reasons, the court finds that Defendant has failed to establish materiality in the constitutional sense. Therefore, Defendant has failed to prove that any *Brady/Giglio* violation occurred in this matter. Assuming, arguendo, that a reviewing court may find such a violation, there is no evidence of record to suggest that any lack of disclosure by the attorneys for the Commonwealth resulted from any intentional, willful, or reckless conduct, as opposed to mere inadvertence.

Most importantly, it must be recognized that the mistrial granted in this matter, upon Defendant's motion, did not pertain to any purported discovery violations. More specifically, the

15

court granted a mistrial in this matter because the jury was presented with testimony regarding a purported prior bad act allegedly committed by the defendant some time before, and at a different location, from the homicide[17].

In assessing this claim, as noted above, the court finds that Attorney Wade credibly testified that: he did not intend to introduce this evidence at trial[18]; he admonished Ms. Bair not to present this testimony at trial; he did not elicit such testimony; he was surprised by such testimony; and, he did not seek to prejudice the defendant's right to a fair trial. Attorney Wade further credibly testified that the Commonwealth has received no benefit from the award of Defendant's motion for a mistrial in this matter.

Accordingly, based upon the totality of the evidence presented, it is clear to this court that the introduction of the challenged testimony was solely the result of an unexpected "blurt out" on the part of a lay witness, despite the reasonable attempts of the attorneys for the Commonwealth to prevent such. The court finds that the record in this matter is devoid of any evidence that the Commonwealth acted in an intentional or reckless manner. The court further finds that the record in this matter is devoid of any evidence of prosecutorial overreaching which, in turn, implicates some sort of conscious act or omission. Accordingly, the double jeopardy bar of retrial is not warranted in this matter. Rather, this court correctly granted Defendant's motion for a mistrial upon the inadvertent admission of the prejudicial prior bad acts evidence. As the result thereof, Defendant will receive the benefit of a new trial untainted by such evidence.

---

[17] At trial, the Commonwealth offered no argument regarding the admissibility of such testimony under any recognized exception to the general prohibition against the admission of prior bad acts evidence.

[18] The court further finds that the Commonwealth committed no violation of any notice requirements contained in Rule 404(b) of the Pennsylvania Rules of Evidence in that the Commonwealth was not intending to introduce such evidence.

16

Rule 587(B) of the Pennsylvania Rules of Criminal Procedure directs that this court must make a determination as to whether Defendant's current challenge should be deemed as frivolous. Said determination will impact the timing of any potential appeal of this court's decision. Our appellate courts have held that a frivolous double jeopardy claim is "a claim clearly and palpably without merit; it is a claim [that] presents no debatable question." *Commonwealth v. Orie*, 33 A.3d 17, 21 (Pa. Super. 2011) (quoting *Commonwealth v. Gains*, 556 A.2d 870, 874-5 (Pa. Super.1989) *(en banc))*. Further, our appellate courts have held that,

> Where the trial court has rejected a criminal defendant's double
> jeopardy claim which is at least 'colorable' or 'arguable', access
> to appellate review is imperative. Otherwise, the risk is simply
> too great that the criminal defendant will be deprived of his
> right to be free from an unnecessary retrial with its accompanying
> '. . . expense, trauma, and rigors incident to a criminal prosecution
> for the second time.

*Gains*, 502 A.2d at 875 (citing *Commonwealth v. Brady*, 502 A.2d 286, 288 (Pa. 1986)).

This court has failed to discover any further appellate guidance to aid its analysis in this regard. This court is wholly cognizant of the challenges which may result to the parties by any further delay in resolution of this matter. That noted, although this court has determined that no evidence exists of record to support Defendant's claims regarding the nature of conduct of the attorneys for the Commonwealth and that Defendant's claim lack merit, this court cannot conclude that Defendant's claim presents "no debatable question". Accordingly, this court finds Defendant's claim to be of a non-frivolous nature.

17

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA : 
                                          :

vs.                                   :     No.      CP-36-CR-0002279-2018

WILBERTO MELENDEZ                  :

## ORDER

AND NOW, this 2nd day of March, 2022, following an evidentiary hearing relative to Defendant's Motion to Dismiss and Bar Retrial and the written submissions of the parties, it is hereby ORDERED that said Motion is DENIED.

Pursuant to Rule 587(B)(5) of the Pennsylvania Rules of Criminal Procedure, Defendant is hereby advised that this order is immediately appealable as a collateral order.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE

ATTEST:

Copies to:     Travis S. Anderson, Esquire, First Deputy District Attorney
                  Cody Wade, Esquire, Assistant District Attorney
                  Jack McMahon, Esquire, Counsel for Defendant, 139 North Croskey Street,
Philadelphia, Pennsylvania, 19103
                  Jeremy D. Williams, Esquire, Counsel for Defendant, 13 East Market Street,
York, Pennsylvania, 17401